OPINION OF THE COURT
Sheldon M. Rand, J.
The instant matters have a lengthy history before this court. They vividly point out some of the shortcomings of the foster care system. Before discussing the disposition of the pending motions, it is necessary to give the background of the cases.
HISTORY
Kim W., born January 2,1971, was placed in the home of John and Lillie Mae B. in June, 1972. David P., born July 16, 1972, was placed in the B.’s home in August 1972. Virginia A., born July 21, 1973, was placed in the B.’s home in August, 1973. It is here noted that Virginia A. was not subject to a foster care review, having been placed as a *707 result of a petition to terminate parental rights, rather than a voluntary placement by the parent as with Kim W. and David P. The petition concerning Virgina A. was granted by the Honorable Jane M. Bolin on December 12, 1977. Furthermore, the three children, although not related, were treated as siblings by Spence-Chapin Services to Families and Children (hereafter Spence-Chapin). The three cases were previously consolidated for hearing by the undersigned in an order dated April 7, 1981.
Kim W. had been freed for adoption on December 29, 1977, a fact which must have been known to the Commissioner of Social Services and/or its agent, Spencé-Chapin, when the petition for a review under section 392 of the Social Services Law was filed. That petition, dated March 13, 1978 states that “termination proceedings have been initiated to free child for adoption with subsidy by the foster parents.” On June 9,1978 a hearing was held before the Honorable Nanette Dembitz on the Commissioner of Social Services petition, and Spence-Chapin was directed to report to the court on December 30, 1978 regarding the adoption placement. The foster parents throughout this period were the B.’s
The Commissioner of Social Services petition for a review under section 392 of the Social Services Law of the foster care status of David P., dated January 31, 1978, states that “termination proceedings have been initiated to free child for subsidized adoption by the foster parents.” On April 25, 1978 a hearing on that petition was held before the Honorable Cesar H. Quinones. The indorsement of Judge Quinones shows that the child was freed for adoption on March 6, 1978. The foster parents throughout this period were the B.’s
Virginia A. was legally freed for adoption on December 12, 1977, Kim W. was legally freed for adoption on December 29,1977, and David P. was legally freed for adoption on March 6, 1978. They were all residing with the B.’s when they were freed for adoption, and the agency was aware that the B.’s wished to adopt all three children.
The cases of Kim W. and David P. were recalendared in January, 1981 by Probation Officer Thomas Lewis, with the authorization of the undersigned. A series of motions, *708 orders to show cause and reply papers then commenced. Both the Commissioner of Social Services and SpenceChapin moved to dismiss the recalendared petitions.
In an order dated March 17, 1981, the court found that there was a “genuine and substantial issue of fact as to whether the former foster parents, Mr. & Mrs. B., were informed of their rights regarding the removal of the children from their home.” The court directed that an administrative fair hearing be held regarding the propriety of the removal of the children and stayed the adoptions. The court also found, in response to Spence-Chapin’s argument, that the court was without jurisdiction to act, that the children were still in foster care and therefore subject to the court’s continuing jurisdiction.
The order of March 17, 1981 was appealed, and the Appellate Division found the appeal to be premature.
A further series of motions was made regarding the stays of the adoptions and the stays were extended pending the decision of the Administrative Judge who presided over the administrative fair hearing. The decision on the fair hearing was rendered July 31,1981. Among other findings, the Director of the Special Hearings Bureau (designated by the Commissioner of Social Services) found that the Commissioner of Social Services and Spence-Chapin’s decision to remove the children from the B.’s was not a proper subject for review. It was further found that the B.’s admission that they failed to comply with the time limitations of section 400 of the Social Services Law should satisfy this court’s concern about the propriety of the removal. The court is not satisfied.
Subsequent to the fair hearing decision, Spence-Chapin moved to dissolve the stays of the adoptions and to dismiss the pending petitions under section 392 of the Social Services Law. That motion was referred to the undersigned and is the only matter presently pending before the court.
THE LAW
Section 392 of the Social Services Law governs the reviews of the status of children placed in foster care.
Subdivision 10 of the statute provides in relevant part: “The court shall possess continuing jurisdiction in proceed *709 ings under this section and, in the case of children who are continued in foster care, shall rehear the matter whenever it deems necessary or desirable *** but at least every twenty-four months.”
Unquestionably, Kim W. and David P. should have been the subjects of section 392 hearings in June, 1980 and April, 1980, respectively, and this would have been prior to the placement of these children in Oregon. It was incumbent on Spence-Chapin to fulfill its statutory duty and file new review petitions regardless of their intention to remove the children from New York. Furthermore, the court must assume that the out-of-State placement of these children was done properly, i.e., conforming to the requirements of the Interstate Compact on the Placement of Children (Social Services Law, § 374-a). Subdivision (a) of article V of the compact, titled “Retention of Jurisdiction”, states: “The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency’s state, until the child is adopted”.
Consequently, Spence-Chapin’s contention that the placement of the children in Oregon divested this court of jurisdiction for the purposes of the section 392 hearing is not viable. The children were, and are still, in foster care and are therefore subject to this court’s continuing jurisdiction.
The article further provides that “Such jurisdiction shall also include the power to effect or cause the return of such child or its transfer to another location and custody pursuant to law.” This further negates Spence-Chapin’s contention that the placement of the children in an adoptive home in Oregon prevents this court from going forward with a section 392 hearing. (See, also, Social Services Law, § 392, subd 7.)
What is also involved in the case of Kim W. is the failure to follow the order by Judge Dembitz directing a report by December 30,1978 on the child’s adoptive placement. Even assuming the bona fides of Spence-Chapin in its assertion to Judge Dembitz that the plan was adoption by the B.’s, *710 the failure to file that report hampers the ability of the court to fulfill its function.
The failure to file foster care review petitions is another matter. Unfortunately, section 392 of the Social Services Law contains no provisions for sanctions against child-caring agencies when there is a failure to schedule a foster care review hearing. (Cf. Social Services Law, § 374-a, art IV.) As a result of the lack of sanctions, foster care agencies have been able to disregard a statutory mandate. The matter presently before the court is not a situation in which the agency, because of workload, has been unable to file the review petitions timely. This is a situation in which there was a complete failure to file the review petitions.
The court urges thé Legislature to amend section 392 of the Social Services Law to provide for penalties when there has not been compliance with the statutory provisions. Additionally, the court agrees with the recommendation of the Mayor’s Task Force on Foster Care Services for the automatic calendaring of an initial section 392 review 18 months after the initial approval of the placement of the child in foster care. The Legislature is urged to go one step further and mandate automatic calendaring by the court of all subsequent review hearings.
Spence-Chapin further alleges that because of the decision by the fair hearing officer, this court has no jurisdiction over these matters. This is not correct.
Subdivision 10 of section 392 of the Social Services Law gives the court the power to rehear a foster care review petition “whenever it deems necessary or desirable”. Thus, regardless of the decision of the fair hearing officer, this court was never divested of its inherent jurisdiction over these children, and the review of the foster care status of these children could have taken place at any time the court deemed appropriate. Furthermore, the order of March 17, 1981 stated that the only issue to be dealt with in the fair hearing was the propriety of the removal of the children from the B.’s home, and not the foster care status of the children.
The interracial placement of these children in a small town in Oregon raises several questions that can only be *711 answered by a full inquiry into their present foster care status. The court must determine if this placement is in the best interests of the children, taking into account the concept that a “child’s self-image and acceptance of his Black identity are crucial to his adjustment in life and his place in the world.” (Matter of B., 89 Misc 2d 493, 496.)
The Mayor’s Task Force on Foster Care Services (p 70) also noted that “[t]he issues surrounding racial matching of children and adoptive parents continue to be complex and controversial” and “children placed in adoptive families with similar racial characteristics are still more easily integrated into the average family group and community than others.” Finally, Spence-Chapin’s decision to place these children in their current surroundings fails to grasp the reality of the situation. While the McM.’s, the present foster parents, can very likely provide more material benefits to the children, the preservation of their cultural background must be considered.
Having all the information regarding the status and progress of the children presented at a hearing will enable the court to make an order of disposition which is in the best interests of the children. (Social Services Law, § 392, subd 7.)
DECISION
The court finds that there has been no review of the foster care status of the children within two years of the previous hearing, as required by subdivision 10 of section 392 of the Social Services Law.
The removal of the children from the State of New York does not, under any circumstances, relieve Spence-Chapin of its obligations under the statute.
As long as the children are under the auspices of the Commissioner of Social Services and Spence-Chapin as agent of the commissioner, they are still in foster care and are subject to the jurisdiction of the Family Court.
Spence-Chapin has not offered any reports on the children’s status or progress in Oregon, and before any adoptions are permitted to take place, this court and the Law Guardian must be given any and all information concerning the children.
*712 Therefore, it is ordered, that the motion to dismiss the instant petitions is denied, and it is further ordered, that the clerk shall calendar these petitions forthwith for hearings pursuant to section 392 of the Social Services Law, and it is further ordered, that the stay of the adoptions is continued until such time as a decision is rendered after the hearing pursuant to section 392 of the Social Services Law and it is further ordered, that Spence-Chapin shall make any and all reports in its possession regarding these children available to the Law Guardian prior to the hearing.