OPINION OF THE COURT
Leah R. Marks, J.
It has come to my attention that Corporation Counsel is attempting to obtain permission to stay this court’s orders for the filing of foster care review petitions in the above cases, questioning both the court’s power to such order filing and the court’s power to further inquire into the care given the four children since their voluntary placement into foster care.
The court’s inquiry has been and will be conducted with the assistance of the “Court Appointed Special Advocates”, a privately funded special group devoted to assisting in such cases. That group is provided space within the courthouse for the sole purpose of helping to develop suitable plans for children in foster care from the earliest possible moment.
I. LEGAL ISSUES
The issues presented in all these cases are: (1) whether the court has the power to consider the best interests of the *72 child at all between the times foster care began and the child’s having been in placement for 18 months; and (2) whether the court, either as a part of a section 358-a of the Social Services Law hearing disposition or under its powers otherwise, has the right to order the filing of a petition for review of foster care prior to the child’s having been in foster care for 18 months.
The New York City Department of Social Services has not suggested either in its requests for permission to appeal and to stay the order or in any motion that could be made before the Family Court that the inquiry into the child’s best interests could or should be carried out in any other way. The purpose of the requests for appeal and stays is to deny the court the right to find out whether it should help these children whose plights have become known during the section 358-a hearings.
The department places in issue the scope of the section 358-a initial review when the voluntary placement agreement comes before the court and the section 392 of the Social Services Law guarantees of periodic reviews.
II. ALL REQUESTS SHÓULD BE DENIED
A. THE LEGAL REASONS
If the child’s plight or potential plight might lead to a neglect petition charging a parent, the court would have the power and duty under section 1034 of article 10 of the Family Court Act to order the department to conduct a child protective investigation. Where the court has probable cause to believe the department itself is failing to fulfill its obligations to care for the child in accordance with the goals established by the State Legislature, the court would be lax if it failed to order a review to determine the factual situation and the need, if any, for any orders to protect the child.
The legislation in question resulted from study after study showing the failures of the department to plan in the best interests of the children, sometimes even to know where the children are. (Only two years ago this court was involved in a section 358-a proceeding in which the child’s physical placement was unknown to the court or to the *73 commissioner’s agent in court. The court’s failure to inquire at that time might have led to the child’s being lost forever.)
The order for the filing of a petition for review under section 392 of the Social Services Law is merely a means of requiring the agency to present a suitable plan for the child’s future to the court.
Section 392 orders such a filing when the child has been in care for 18 months. Its legislative history shows a clear concern to assure a child is not lost in foster care. The Legislature is intent on guaranteeing no child can be kept in foster care without a review after 18 months.
The Legislature has never expressed an intent (nor does the statute) to prohibit reviews at an earlier time. The Legislature’s concern for continuous protection for the child is clear from subdivision 10 of section 392 of the Social Services Law granting continuing jurisdiction over these cases and from its most recent action.
The Legislature has shown regular concern. Within this year it directed the commissioner to place a child upon its return into foster care, with the same foster parents who last cared for the child.[1] The point of view presented by the commissioner would prohibit the court even from asking if that had been done when the new voluntary placement agreement came before the court in a section 358-a hearing.
The department has suggested the court went beyond its powers even to ask questions in the section 358-a hearing, questions having answers that provided the information leading to the review order.
The department says section 358-a is limited in purpose to reimbursement issues although the 1979 amendment of that law removed such language from the statute (L 1979, ch 610, § 4). That amendment and common sense require the court to ensure other purposes for the review in accordance with the legislative directive that the best interests of the child be uppermost.
The court is ordering no more than is permitted within its clear power under section 255 of the Family Court Act. *74 That section permits ordering any department employee to render such assistance to the children in question as his legal duties to those children require. This review order simply gives an opportunity for all concerned persons to be heard by directing the filing of a review petition. The court asks only that the commissioner report what he is doing to carry out his responsibilities to these children.[2]
There is not only the power to look into the real best interests of the child, but the duty based on the inability or unwillingness of the department to file the section 358-a petition swiftly as required by the statute. In these cases the children had been in placement many months before the petitions ever arrived in court. The department files late, and then denies the court its right and duty to question the plight of the child.
B. THE HUMAN AND MORAL ISSUES
Although legal opinions seldom deal with human and moral issues, it should be recognized that foster care concerns are related to thousands of children without friends or anyone to speak for them, who have entered foster care and whose futures may be unstable, lonely and without love through no fault of theirs.
The foster care system was established to help but is often the source of neglect, sometimes physical cruelty which the Legislature has acted to prevent both through statutory requirements for the department’s actions and reviews by the court.
Were the court to have cause to believe these children were being held in a black pit until they had been in the commissioner’s care for 18 months, surely the duty of the court to demand the protective agency report and present its plan would not be seriously questioned.
These cases are less dramatic, but the potential needs of the children and the duty of the court to find out are important to these children whose immediate needs the commissioner asks this court to ignore:
*75 1. THE OLDER BROTHERS
Jeremy and Jose Mendez have no mother; their mother is dead. Their father has failed to maintain contact or to plan realistically for them for years. No one has appeared who cares about these children. The information brought forth at the section 358-a hearing indicates they are abandoned and their futures are unplanned. They were placed on July 17, 1981. Five months have already passed in the lives of these six and nine year olds. Every day that passes brings them closer to an age at which a permanent home is difficult to find.
2. THE NEGLECTED BABY
Emily Ramirez is a baby who entered foster care directly from the hospital. She is the victim of drugs provided in the womb. The Department of Social Services has not filed a neglect petition. The mother has had little contact and shown no interest in the child who was placed on June 23, 1981. The child has been in placement for over six months and there seems no reáson why a permanent plan should not be ensured for the child without delay.
3. THE OTHER BABY
Susan Feldman was placed on February 10, 1981, three days after her birth. Her mother often speaks of surrendering her for adoption but she has not acted. Her mother has also indicated a desire for return of the child, but she has not filed a petition. Information has been presented that both the mother and the father may be mentally ill and unable to care for the child at any time in the future. The child is in a preadoptive home without a strong legal foundation for such a placement. This baby’s future needs careful review, with the parents having full notice of their rights, including the mother’s right to ask for the return of the child.
These stories are ones that the court knows can lead to years of foster care without resolution unless action toward a permanent plan is taken while the child is young enough to benefit from it.
In referring to the services for children that can be expected from the department on a regular basis, the
*76 Mayor’s Task Force on Foster Care Services[3] pointed out: “Neither the adequacy of protective and family services, nor the correctness of decisions to place children in foster care, nor the adequacy of services to families of children in temporary or short-term care are properly reviewed.” The report also points out: “Insensitivity to family need is also evident from a look at where the children are placed.”[4]
All the court is demanding is the presentation of a suitable plan for these children so the goals of foster care legislation will have meaning for them personally. Of course, their need for the commissioner to carry out his responsibilities is greater because no responsible adult has appeared to fight for their futures outside the agency; only the court is aware of what is happening and the court has a continuing duty to assure the best interests of the children are observed by the commissioner in whose care they have been placed.
C. HARM TO THE CHILDREN
If stays were granted to the court’s orders for review, there would be only one result. No one would look at what is happening for these children for 18 months or until the commissioner filed a section 392 petition, an act that often takes place long after 18 months have passed.
If the stays are refused, there is no order the commissioner perform any act for or to or on behalf of the children except to present plans to the court. Any orders following that presentation could be appealed without debate.
There is no good reason to permit a stay whatsoever. Permission for an appeal seems to be without basis also.

. (Social Services Law, § 398, subd 6, par [n], as added by L 1981, ch 204.)

. See the unpublished memorandum of law in Damon Anderson (L-3461/81) now before the Appellate Division for a more complete discussion of the law. (See, also, Matter of John M., 71 AD2d 144.) It is true the lower court was reversed, but on grounds leaving intact the power to review the child’s present and future best interests in a section 358-a hearing.

. (Redirecting Foster Care A Report to the Mayor of the City of New York, 1980, p 14.)

. {Id., p 30.)