In the Matter of DAMON ANDERSON. COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK et al., Appellants.

First Department, October 7, 1982

### APPEARANCES OF COUNSEL

*Roger K. Evans* of counsel (*Norman Siegel,* attorney), for appellant.

*Rochelle Feder Hansen* and *Renee L. Berliner* of counsel (The Council of New York Law Associates, attorneys), for Damon Anderson.

*June A. Witterschein* of counsel (*Leonard Koerner* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

MILONAS, J.

This case involves a foster care proceeding in the Family Court, New York County. On July 22, 1981, a hearing was conducted pursuant to section 358-a of the Social Services Law, for the purpose of obtaining the court's approval of a voluntary placement instrument executed on March 6, 1981. By this agreement, respondent Adele Cromitie granted permission to petitioner Commissioner of Social Services to put her infant grandson, Damon Anderson, in a suitable foster care placement. Cromitie, who has eight children of her own, plus two grandchildren in her custody, had been evicted from her apartment because the rent had been increased to an amount exceeding the maximum allowable to a recipient of public assistance. Thus, the purpose of the placement was to make temporary arrangements for Damon until suitable housing could be found for the Cromitie family. Although the court, at the conclusion of the hearing, accepted the placement instrument, holding that it had been knowingly and voluntarily executed, the Judge also directed the agency to submit a written report on the progress of Cromitie's natural children and on Damon's adjustment to foster care so that the court would be able to evaluate whether Damon should be made available for adoption. The agency was also ordered not to release Damon before reporting back to the court.

When, on September 8, 1981, the court reviewed the report which had been submitted to it in accordance with its prior mandate, it expressed its dissatisfaction with the report and directed that a new one be prepared. This second report, to be filed by October 15, 1981, was to contain a history of Cromitie's public assistance and evictions, the school records of her children who are of school age and the work records and activities of her children who are not of school age. Cromitie, who had not to date been represented by counsel, was finally assigned an 18-B lawyer (County Law, art 18-B) for future proceedings. On October 15, 1981, the matter was again adjourned until November 18, 1981 to enable Cromitie's recently appointed lawyer to familiarize himself with the case. However, prior to the adjourned date, both the commissioner and Cromitie

sought stays of the orders in question, as well as leave to appeal, which this court granted on December 8, 1981. Subsequently, on April 6, 1982, the Family Court appointed Marcia Lowry guardian ad litem for Damon.

The court below, in support of the actions which it has taken in connection with the instant case, relied upon the majority opinion of the Appellate Division, Third Department, in *Matter of John M.* (71 AD2d 144) which, by a 3 to 2 vote, held that the Family Court in that matter was within its authority when it advised a child's legal guardian that the child would not necessarily be returned to her after the 18-month period specified in the transfer-of-custody agreement, approved the transfer instrument, appointed a Law Guardian to represent the child, and ordered that the child not be returned to the care of his guardian without the concurrence of the Law Guardian. According to the majority opinion, the language of section 358-a of the Social Services Law implicitly confers broad powers upon the Family Court to protect the child's best interests during the period of its foster care. Despite the fact that the Court of Appeals unanimously reversed this decision in *Matter of John M.* (51 NY2d 999) on the dissenting opinion of Justice J. CLARENCE HERLIHY, the Family Court in the present matter perceived "some intimation of affirmance by the Court of Appeals of the power of the Family Court to consider the needs of the child at the time of the 358-a hearing."

Nowhere in Justice HERLIHY's opinion (*Matter of John M.*, 71 AD2d 144, at pp 148-149) is there any mention of section 358-a bestowing any general authority on the Family Court to do anything beyond granting the petition referred to in this provision and approving the voluntary placement instrument. Certainly, if Damon were a neglected or abused child, the Family Court has the authority to act to insure his best interests. (Family Ct Act, art 10; see, also, Social Services Law, § 384-b.) Regardless of what the court below believes the law should appropriately be, the words of the statute do not support any interpretation which would give the Family Court jurisdiction over the foster care placement of the child until the elapse of 18 months from the date of the placement. (See Social Ser-

vices Law, § 392.) To indorse the view espoused by the Family Court would, in all probability, have the result of discouraging people from availing themselves of the relief afforded under section 358-a of the Social Services Law and would, ironically, have the opposite effect of what was intended by the Legislature in enacting this provision.

Consequently, the order of the Family Court, New York County (DEMBITZ, J.), entered July 22, 1981, which, *inter alia,* directed petitioner-appellant Commissioner of Social Services of the City of New York not to release the infant Damon Anderson to respondent-appellant Adele Cromitie before submitting a written report to the court regarding the progress of Cromitie's natural children and Damon Anderson's adjustment to foster care and determined that Cromitie has no legal right to preclude adoption of Damon, should be reversed on the law to the extent appealed from, without costs or disbursements. Order of the Family Court, New York County (DEMBITZ, J.), entered September 8, 1981, which, *inter alia,* directed that the subject report be submitted to the court by October 15, 1981 and that this report also include other specified information, should be reversed on the law to the extent appealed from, without costs or disbursements. Order of the Family Court, New York County (DEMBITZ, J.), entered April 6, 1982, which, *inter alia,* granted the application of Marcia Robinson Lowry to be appointed guardian ad litem for the infant Damon Anderson, should be reversed on the law to the extent appealed from, without costs or disbursements.

KUPFERMAN, J. P. (concurring in part and dissenting in part). I would dismiss the appeal on the ground that the question is moot.

As we were appropriately informed by the parties, the child has been returned to the grandmother on consent and as so ordered by this court, and, therefore, there is no need for any further proceedings here.

However, inasmuch as a memorandum of the court and a concurring opinion are being issued, which express some observations, I would add some further observations.

It is my personal opinion that a Judge of the Family Court has not only the right but possibly the duty to request information which would be helpful in determining whether there was a custody problem and whether the child should be considered for adoption. This is necessary in order to protect the best interests of the child once the matter has been submitted for consideration by the Family Court. This was done here. It may be that some of the Family Court statements in this instance indicated a concern which went beyond the needs of the situation. However, no action was taken.

As to the appointment of a guardian ad litem, it must be kept in mind that the Commissioner of Social Services and the attorneys for the respondent-appellant grandmother both took the same position, which was that the Family Court should not seek further information. The child, therefore, was not really represented and this court could not have had the benefit of the consideration of the various nuances involved in the case without the presence of the guardian ad litem, whose presentation, although the matter was really moot, is to be commended. (See *Braiman v Braiman,* 44 NY2d 584, 591.)

LUPIANO, J. (concurring). While I fully indorse the rationale set forth in the memorandum for the list herein, the following observations are also made: grave overtones of lack of due process and a cavalier coercive atmosphere respecting the rights of Adele Cromitie, the respondent-appellant grandmother, are present in this record. These overtones are at odds with the statutory framework in which the Family Court was operating, and with the best interests of the child, Damon, and were strongly objected to by the petitioner-appellant, Commissioner of Social Services of the City of New York. Further, the rationale articulated by the Family Court in support of its orders appealed from herein are more appropriately addressed to the legislative branch of government and in no way constitute a proper legal predicate justifying the actions taken by the Family Court under the present statutory framework. The tenor of the Family Court's initial order was to prepare Damon for adoptive placement, a determination not warranted at the early stage of the section 358-a proceeding,

since Damon's placement was voluntary and was to be only temporary. The applicable statute gives neither the commissioner nor the placing party any notice of the fact that by entering into a voluntary placement agreement for the temporary transfer of the care of a child to the commissioner, those parties may be subjecting themselves to a court order *in a section 358-a proceeding* prohibiting the return of the child to the placing party.

Further, the Family Court, in an effort to have its opinion on the merits of this case vigorously presented to this court, granted the application of a stranger to the child Damon to be appointed, solely for the purpose of the appeal, as guardian ad litem for Damon. Neither section 358-a of the Social Services Law, section 165 of the Family Court Act nor CPLR 1201 authorizes the appointment of a guardian ad litem for the purpose of defending the decision of a Judge which is on appeal. To allow the appointment of the guardian ad litem to stand would defeat the very purpose of the Legislature in providing a method whereby courts can appoint neutral representatives for children for the purposes of protecting their best interests in litigation. Indeed, subdivision (6) of section 358-a of the Social Services Law provides: "In any case where a hearing is directed by the family court judge he may, in his discretion, appoint *a law guardian* to represent the child, who shall be an attorney admitted to practice law in the state of New York" (emphasis supplied).

SANDLER and CARRO, JJ., concur with MILONAS, J.; KUPFERMAN, J. P., concurs in part and dissents in part in an opinion; LUPIANO, J., concurs in a separate opinion.

Orders, Family Court, New York County, entered on July 22, 1981, September 8, 1981 and April 6, 1982, respectively, reversed, on the law, without costs and without disbursements.