In the Matter of D. CHILDREN. W. BURTON RICHARDSON, as Director of the Monroe County Department of Social Services, Appellant; SALLY MOORE, as Guardian ad Litem, Respondent.

Fourth Department, December 17, 1982

### APPEARANCES OF COUNSEL

*Milo I. Tomanovich* (*James Robinson* of counsel), for appellant.

*Elizabeth L. Schneider* for respondent.

### OPINION OF THE COURT

BOOMER, J.

These appeals concern the powers of the Family Court with regard to the care and custody of children voluntarily placed with the Department of Social Services.

By petition dated January 4, 1982, the Director of the Monroe County Department of Social Services commenced a proceeding in Family Court, pursuant to section 358-a of the Social Services Law, for an order approving an instrument that provided for the voluntary transfer of the care and custody of the five children of the D. family to the Department of Social Services. On January 14, 1982 the

Family Court granted the petition and approved the instrument. At the same time the court granted an order appointing Sally Moore, "a voluntary duly sworn Court Appointed Special Advocate of the County of Monroe", as a guardian ad litem for the children "to protect their best interest in this matter". In granting the order, the court stated that there were "a multitude of problems in the family and perhaps (the guardian ad litem) could assist the caseworker and consult with the caseworker". Court Appointed Special Advocates (CASA) is an organization of volunteers whose purpose is to assist Family Court and the parties to a Family Court proceeding involving foster care of children. The stated duties of the CASA volunteers are to "review the child's foster care placement and explore options which may help reunite natural families, or failing that, free the child for adoption. This will involve speaking with the child's social worker, family or others who would be of help in understanding the child's living situation." The attorney for the Department of Social Services refused to consent to the order appointing the guardian ad litem since the instrument of surrender had already been approved.

After the entry of the order, the Department of Social Services declined to co-operate with the CASA volunteer and the foster parents advised her that she would have to get any information about the children from the Social Services caseworker. As a result, the Family Court Judge signed a subpoena duces tecum requiring the Director of the Department of Social Services to attend before the court on February 18 and to bring with him all of the case records pertaining to the children involved. The director moved to quash the subpoena and to vacate the order appointing the guardian ad litem on the ground that the proceeding seeking approval of the instrument of voluntary transfer of custody had terminated with the order of approval and, hence, the court had no further jurisdiction to issue the subpoena or to appoint the guardian ad litem. On the return date, May 13, 1982, the Judge denied the motion to vacate the order appointing the guardian ad litem and reserved decision on the motion to quash the subpoena. On his own motion he granted an order directing

the Department of Social Services to co-operate fully with the guardian ad litem.

By permission of this court, the Director of the Department of Social Services appeals (1) from the order appointing the guardian ad litem, and (2) from the order that denied the motion to vacate the appointment of the guardian ad litem and directed the Department of Social Services to co-operate fully with the CASA volunteer. For the following reasons, in the first appeal, the order should be vacated and in the second appeal, the order of May 13, 1982, should be reversed and the motion granted to the extent of vacating the order of January 14, appointing the guardian ad litem, and that part of the order of May 13, 1982 directing the Department of Social Services to co-operate fully with the CASA volunteer should be vacated.

Section 384-a of the Social Services Law sanctioned the instrument approved in this proceeding. That section provides that parents may voluntarily transfer the care and custody of their child to an authorized agency by a written instrument signed by the parents and the agency and approved by Family Court. Section 358-a of that law, under which this proceeding was brought, sets forth the procedure for court approval of the instrument of transfer. A petition must be presented to the court and the court, if satisfied that the best interest and welfare of the child would be promoted thereby, "shall thereupon grant the petition and approve such instrument". (Social Services Law, § 358-a, subd [3].) The statute expressly provides for the return of the child without court order. If the instrument provides for the return of the custody of the child to the parents at any specified date or upon the occurrence of any identifiable event, the agency must comply with the terms of the instrument and return the child. It may also return the child, at the request of the parents, prior to the specified date or event and it may return the child, at the request of the parents, even though the instrument fails to specify a date or identifiable event for the child's return. The parents may file a petition with Family Court seeking custody of the child or they may proceed by writ of habeas corpus in Supreme Court if the agency fails to return the

child in compliance with the terms of the instrument or upon the request of the parents.

Section 392 of the Social Services Law requires that where a child has remained in the custody of the agency for a continuous period of 18 months, the agency shall, by petition, commence a proceeding for review by the Family Court of the "foster care status of such child". (Social Services Law, § 392, subd 2.)

Here, when the Family Court approved the instrument of transfer, this proceeding, brought under section 358-a, "was ended for 18 months unless, of course, some extraordinary circumstances required a different time schedule." (*Matter of John M.,* 71 AD2d 144, 148, revd on dissenting opn of HERLIHY, J., 51 NY2d 999.) Hence, the court has no jurisdiction over the parties or the children unless and until a new petition is filed seeking return of the children or review of their foster care status. The court appointed the guardian ad litem to protect the best interest of the children while they were in foster care and when no proceeding was pending before the court. This is the responsibility of the Director of the Department of Social Services and the court may not intrude upon his responsibility (*Matter of John M.,* 71 AD2d 144, 149, *supra; Matter of Leon RR,* 48 NY2d 117, 126; *Matter of Anderson,* 89 AD2d 51). "[C]ourts do not normally have overview of the lawful acts of appointive and elective officials involving questions of * * * discretion". (*Matter of Lorie C.,* 49 NY2d 161, 171.) Nothing in the Social Services Law nor in the Family Court Act may be construed to give the Family Court powers to oversee the foster care status of a child voluntarily placed with the Department of Social Services until the case comes before the court, under section 392 of the Social Services Law, for review, normally after 18 months (*Matter of Anderson, supra,* p 53). Although the Legislature has specifically given the Family Court "continuing jurisdiction" in proceedings commenced under section 392 (Social Services Law, § 392, subd 10), significantly, it has withheld that jurisdiction in proceedings brought under section 358-a for court approval of instruments of transfer of custody.

We need not decide whether it was proper, in this case, to appoint a guardian ad litem, as opposed to a Law Guardian.[*] The purpose of both a Law Guardian and a guardian ad litem is to represent the best interest of a child in a proceeding before the court. The CPLR gives courts the authority to appoint a guardian ad litem "at any stage in the action". (CPLR 1202, subd [a].) Here, the court had no authority to appoint a guardian ad litem since this action or proceeding had terminated. Moreover, "[t]he authority of a guardian ad litem is limited to the one particular action in which he is appointed." "When the action terminates by entry of judgment, the rights and powers of the guardian ad litem end." (21 Carmody-Wait 2d, NY Prac, § 124:28, p 108, n 1.) The guardian ad litem was appointed in connection with a proceeding to approve a voluntary transfer instrument and thus she had no authority to act after the instrument was approved.

The court's later order, directing the Department of Social Services to co-operate with the CASA volunteer, was also without authority. In making its direction, the court relied upon section 255 of the Family Court Act, which empowers the court to "order any agency or other institution to render such information, assistance and cooperation as shall be within its legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act." This section, however, "is only effective within the scope of the court's legal authority." (*People ex rel. Thorpe v Clark,* 62 AD2d 216, 227; see *Matter of Lorie C.,* 49 NY2d 161, 167, *supra.*) As noted before, the court's legal authority in this proceeding terminated when it approved the instrument of voluntary transfer.

Accordingly, we hold not only that the court was without authority to appoint a guardian ad litem after it approved the instrument, but also that it was without authority to direct the Department of Social Services to co-operate with the CASA volunteer. We acknowledge the sincerity of the

---

[*] See subdivision 6 of section 358-a of the Social Services Law. Justice LUPIANO, in his concurring opinion in *Matter of Anderson* (*supra,* p 56), remarked that "[t]o allow the appointment of the guardian ad litem to stand would defeat the very purpose of the Legislature in providing a method whereby courts can appoint neutral representatives for children for the purposes of protecting their best interests in litigation."

court and of the guardian ad litem in attempting to protect the best interest of the children. Nevertheless, however commendable are the purposes of the CASA program and the efforts of the CASA volunteers, the orders appealed from are beyond the limited powers of the Family Court. If there is to be any extension of the Family Court's jurisdiction over the Department of Social Services in foster care matters, it must come from the Legislature.

DOERR, J. (dissenting). The narrow question I see presented in these appeals is whether Family Court has authority to appoint a guardian ad litem to represent children under section 358-a of the Social Services Law. The majority hold that the court had no legal authority to do so because the proceeding had "terminated". I respectfully disagree on this question of law.

While one particular judicial proceeding has ended, i.e., the court approval of the voluntary transfer petitions, by no means has the entire proceeding been concluded. The children are still in foster care and must return to court when their parents petition for their return (Social Services Law, § 358-a, subd [7]) or after they have remained in foster care for 18 months (Social Services Law, § 392, subd 2, par [a]), or possibly sooner if a parental termination proceeding is deemed appropriate before then (Social Services Law, § 384-b). Therefore, in my view, we should look at the proceeding from the children's point of view; to them the matter remains unresolved. I cannot agree with the implicit suggestion that the children would be entitled to have a guardian ad litem at the time of the initial placement and then again after 18 months, but not in the meantime.

The majority rely principally on *Matter of John M.* (51 NY2d 999, revg on dissent below 71 AD2d 144, 148-149). In *John M.* the dissenting Justice noted that Law Guardians are appointed only to represent an infant in a proceeding, thus implying that the appointment of a Law Guardian terminates between court appearances. The majority apply this rationale to a guardian ad litem as well, but in my view this construction misapprehends the nature of the distinction between a Law Guardian and a guardian ad litem.

Law Guardians, who must be attorneys and compensated for their services, are provided for by sections 241 through 249 of the Family Court Act. The principal function of Law Guardians is to provide the assistance of counsel to minors to help them protect their interests and express their wishes to the court (Family Ct Act, § 241). A guardian ad litem, on the other hand, need not be an attorney and may be "[a]ny adult person who is capable of protecting the interests of the ward and has no conflict of interest" (Siegel, New York Practice, § 198; see, also, 21 Carmody-Wait 2d, § 124:27). The authority for the court in which an action is triable to appoint a guardian ad litem at any stage of the proceeding is found in CPLR 1202. CPLR provisions apply to all courts of the State unless there is an inconsistent statute (CPLR 101). I perceive no inconsistency between the provisions of the Family Court Act with respect to Law Guardians and the CPLR with respect to guardians ad litem. Although the functions of the two overlap to some extent, the primary difference is that Law Guardians must be compensated, and where children are placed in foster care for protracted periods of time before the matter returns to court it is not economically feasible to employ someone for the sole purpose of looking after their best interests over that period when someone else, without compensation, can perform the same task.

While a Law Guardian, as an attorney, has virtually nothing to do between court appearances, the guardian ad litem does have a role, albeit a limited one. The guardian ad litem exists not only to express the child's wishes to the court, but also to follow the case so that the child will not "fall through the cracks" of foster care. Although the Department of Social Services is required to bring a foster care review petition every 18 months, the reported decisions of this State are fraught with examples in which Social Services Departments, overburdened with huge caseloads and frequently understaffed, have failed or been unable to comply with their statutory duties to commence timely foster care review petitions (see, e.g., *Matter of Wayne T.D.,* 104 Misc 2d 314 [noting that the review petition was not brought for over two years following placement]; see, also, *Matter of Kim W.,* 111 Misc 2d 706 [in

which two children who had lived with a foster family almost since birth were taken away at ages 8 and 9 from the foster family, who wanted to adopt them, and placed for adoption in Oregon, a result which occurred largely because there had been no review petition]; see *Matter of Emily R.*, 112 Misc 2d 71 [in which orphans and newborn babies were left needlessly in foster care, even though they could have easily been freed for adoption; in the latter case the matter was brought to the court's attention by CASA]). Thus, the guardian ad litem acts, to some extent, as a "watchdog" for the child. The guardian ad litem is the child's spokesman who can remind Social Services that 18 months are about to expire, or that even though 18 months have not yet expired perhaps some other step, such as freeing the child for adoption, should be taken sooner. The guardian ad litem can also suggest to the foster parent that he or she bring a review petition as permitted by statute (Social Services Law, § 392, subd 2, par [c]). Although the Social Services Law gives the child no standing to file a review petition himself, the guardian ad litem, acting for the child, could notify Family Court that 18 months are up and then the court, which has continuing jurisdiction over children who have been in foster care for 18 months, can reconsider the appropriateness of foster care upon its own motion (Social Services Law, § 392, subd 10). Alternatively, if the department timely carries out its statutory function, the guardian ad litem would simply be there to express the child's point of view, but at least the guardian ad litem would already be in place and familiar with the facts, thus obviating any further delay required if a new guardian comes into the case at a later stage.

Finally, I apprehend no usurpation of the commissioner's authority by reason of the order directing the Department of Social Services to "cooperate fully" with the guardian ad litem. The court here did nothing more than appoint a guardian ad litem to "[a]ssist the court in giving said children and their family such care, protection and assistance as will best enhance their welfare" and direct that the caseworker or caseworkers co-operate with the guardian ad litem. The guardian ad litem has been given no supervisory or decision-making authority (cf. *Matter of*

*John M.,* 51 NY2d 999, revg on dissenting opn of HERLIHY, J., 71 AD2d 144, 148-149). Her role is simply to aid and assist the children wherever possible. The primary responsibility for providing the care of dependent children rests with the Commissioner of Social Services. The ultimate responsibility to determine what is in the child's best interests always remains with the court, and neither the commissioner, a guardian ad litem, or a Law Guardian has any role in this determination, except advisory.

While the phrase employed by the court in its order ("to cooperate fully") might be criticized for vagueness, such language merely tracks the wording contained in section 255 of the Family Court Act which authorizes Family Court to order any agency "to render such information, assistance and cooperation * * * as may be required to further the objects of this act" (Family Ct Act, § 255). I interpret the order to mean that such information be made available as is necessary for the guardian ad litem to fulfill her function. This could well be limited to the names, addresses and telephone numbers of the foster parents as well as the natural parents, but it in no way implies that the guardian can give, nor is the department required to accept, advice or instructions from the guardian as to how to run its business.

DILLON, P. J., HANCOCK, JR., and DENMAN, JJ., concur with BOOMER, J.; DOERR, J., dissents and votes to affirm in an opinion.

Order appointing guardian ad litem vacated, without costs.

Order denying the motion to vacate the appointment of the guardian ad litem reversed, without costs, and motion granted, in accordance with opinion by BOOMER, J.