OPINION OF THE COURT
Timothy J. Lawliss, J.
On September 25, 2013, the Commissioner of the Clinton County Department of Social Services (hereinafter the Department) filed a petition under article 10 of the Family Court Act alleging that the respondent Maria T. neglected the subject child, Gunner T. (date of birth: xx/xx/xxxx). At the initial appearance, the court issued a temporary order removing Gunner from Ms. T.’s care and placing him in the care and custody of the Department. On December 9, 2013, the court conducted a fact-finding hearing and adjudicated Gunner to be a neglected child as that term is defined by Family Court Act § 1012 (f) (i) (B) and found that Ms. T. was the person responsible for the neglect. On January 13, 2014, this court issued a combined order of disposition and permanency hearing order (hereinafter the combined order) placing Gunner in the care and custody of the Department until the completion of the next permanency hearing.
During the first four weeks after Gunner was temporarily placed with the Department, he primarily resided in the “M.” foster home. While Gunner resided in the M. home, he spent weekends in the foster home of Matthew C. and Peggy C. (C.). After that four-week period, Gunner has resided continuously in the C. foster home.
On or about March 20, 2014, the Department issued a 10-day notice to Mr. and Mrs. C. informing the C.s of the Department’s intent to remove the subject child from their home and place Gunner with his great-uncle, who, subsequent to the commencement of this action, became certified as a foster parent. (See 18 NYCRR 443.5 [a] [1] [outlines notice requirements for contemplated move].)
Upon learning of the 10-day notice, the Attorney for the Child moved, pursuant to Family Court Act § 1061, to modify the combined order to include a requirement that Gunner continue to reside in the C. home. In support of the motion, the Attorney for the Child filed her own affirmation with various attachments, affidavits of both of the current foster parents, Mr. and Mrs. C., an affidavit of Gunner’s day-care provider, and a memorandum of law. The Attorney for the Child asserts that it is in *541 Gunner’s best interest to remain in the C. home and, therefore, the court should prohibit the Department from moving Gunner out of the C. home.
In opposition to the motion, the Clinton County Department of Social Services filed the affidavits of caseworkers Rebeccah Jabaut and Elizabeth Jost, an affidavit of family support worker Peggy Cameron, an affidavit of Gordon T., Gunner’s great-uncle, an affidavit of Ronnie C., Mr. T.’s partner, an affirmation of Christine G. Peters, Esq., the Department’s Director of Legal and Social Services with various attachments, and a memorandum of law.
In opposition to the motion, respondent mother Maria T. filed her attorney’s affirmation. The mother’s position on this motion, as set forth in her counsel’s affirmation, is based upon communications between the mother and her attorney prior to the filing of the instant motion. Counsel has been unable to locate and communicate with the mother since the filing of the instant motion.
The Department contends that the motion must be denied because, as a matter of law, the court lacks the authority to prohibit the contemplated move. In the alternative, the Department contends that the contemplated move, from the C. home to the home of Gunner’s great-uncle, would serve the child’s best interest because of the biological connection between Gunner and his great-uncle.
The threshold question before the court is whether or not the court has the authority to direct placement of the subject child in a specific foster home. The court answers that question in the affirmative for the following reasons. Pursuant to Family Court Act § 1017, upon the temporary removal of a child pursuant to part 2 of article 10 of the Family Court Act or placement of a child pursuant to Family Court Act § 1055, the Department must, among other things, file a report with the court. (See Family Ct Act § 1017 [1].) Upon receipt of said report, the court may, among several alternatives, direct the Department that “the child reside in a specific certified foster home where the court determines that such placement is in furtherance of the child’s best interests.” (See Family Ct Act § 1017 [2] [b].) In this action, the prerequisites of Family Court Act § 1017 (2) (b) have been satisfied: the combined order specifically placed the child with the Department pursuant to Family Court Act § 1055; and the Department has filed the report required by Family Court Act § 1017 (1). Thus, placement in a specific foster home is within the court’s express authority.
*542 The fact that the combined order not only placed the child pursuant to Family Court Act § 1055, but also continued the placement pursuant to Family Court Act § 1089 does not in anyway limit the court’s authority. It would be illogical and contrary to the goals of the Family Court Act to hold that the court had the authority to identify a specific certified foster home after a dispositional placement under Family Court Act § 1055, but not after the first permanency hearing. This point is especially true in this action, where the Family Court Act § 1055 placement occurred at the same time as the first permanency hearing.
Although not controlling in this action, the court notes that once a child has been freed for adoption, Family Court Act § 1089 (d) (2) (viii) (B) (I) permits the court to direct that the child be placed in the foster home where that child resides, has resided in the past or with other suitable persons. Clearly the drafters of articles 10 and 10-A of the Family Court Act intended to provide the Family Court discretion to place a child in a specific foster home from the time of the child’s temporary placement through and including the time that the child leaves foster care.
In the Department’s opposition papers, the Department fails to address any of the provisions referenced above. Although to be fair, the Attorney for the Child, in support of her motion, failed to address any of the provisions referenced above.
The Department’s assertion that the court lacks the authority to grant the pending motion relies primarily upon Social Services Law § 400, which states in pertinent part:
“1. When any child shall have been placed in ... a family home by a social services official, the social services official may remove such child from such . . . family home and make such disposition of such child as is provided by law . . .
“2. Any person aggrieved by such decision of a social services official may appeal to the department pursuant to the provisions of section twenty-two of this chapter.”
In essence, the Department asserts that once the Department served the foster parents with the 10-day notice the foster parents’ only recourse is the appeal referenced in Social Services Law § 400 (2), also known as a “fair hearing.” (See Social Services Law § 22 [1].) The Department contends that foster parents must exhaust their administrative remedies prior to *543 seeking judicial intervention. The Department never contends that the Attorney for the Child is a “person aggrieved” as that term is used in Social Services Law § 400 (2), but rather asserts that the Attorney for the Child “cannot carve out rights for the foster parents that they would not normally have by making a motion to the Family Court, a Court of limited jurisdiction and not one statutorily equipped to decide [CPLR] Article 78 issues.”
The court holds that the foster parent and the subject child, represented by the Attorney for the Child, are separate entities with separate rights. The Attorney for the Child is not attempting to commence an article 78 proceeding in Family Court. The question of when foster parents can commence an article 78 proceeding in Supreme Court is not dispositive, and, indeed, not particularly relevant to the question of whether the court has the authority to grant the Attorney for the Child’s motion. Family Court Act § 1088 provides that the court maintains jurisdiction over the instant matter and the subject child and the court may rehear the matter whenever it deems necessary or desirable, or upon motion by any party entitled to notice, or upon motion by the Attorney for the Child.
Lastly, the court notes that although the State is required to “consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child,” this provision does not require the State to place a child with a relative if the best interest of the child would be served by placement with a non-relative. (42 USC § 671 [a] [19] [quoted language]; Social Services Law § 398 [16].) Indeed in several contexts courts have held that placement with non-relatives is appropriate despite available relative custodial resources. (See Matter of Ender M. Z.-P. [Olga Z.], 109 AD3d 834 [2d Dept 2013] [once parental rights have been terminated, there is no presumption favoring the child’s biological family]; Matter of Vanisha J. [Patricia J.], 87 AD3d 696 [2d Dept 2011] [a non-parent relative takes no preference for custody over prospective adoptive parents]; Matter of Haylee RR., 47 AD3d 1093 [3d Dept 2008] [prior to the subject child being freed for adoption, Family Court properly found that the child’s best interest were served by continuing her placement in foster care rather than placing the child with the paternal great-aunt].)
In summary, the court holds that the court has the authority to direct the placement of the subject child in a specific foster home. By separate order, the court shall schedule a hearing to *544 determine if the relief requested by the Attorney for the Child serves the best interests of Gunner.